FILED
ORIGINAL
2012 SEP 20 P 3:15
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

STEPHEN M. HAYES (SBN 83583)
STEPHEN P. ELLINGSON (SBN 136505)
**HAYES SCOTT BONINO ELLINGSON & McLAY, LLP**
203 Redwood Shores Pkwy., Suite 480
Redwood City, CA 94065
Telephone: 650.637-9100
Facsimile: 650.637-8071

Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

E-filing

UNITED STATES DISTRICT COURT

NJV

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MORRISON,<br>Plaintiff,<br>v.<br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and DOES 1 to 20, inclusive,<br>Defendants. | CASE NO. C 12 4923<br>**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTIONS 1332 AND 1441a [DIVERSITY JURISDICTION]; DEMAND FOR JURY TRIAL** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") hereby removes to this Court the state action described below:

1. State Farm is a defendant in the civil action commenced on July 2, 2012 in the Superior Court of the State of California, County of Mendocino, Case No. SC-UK-CV-G-12-0060492, entitled Morrison, John v. State Farm Mutual Automobile Insurance Company. A copy of the Complaint is attached hereto as Exhibit "1" and is incorporated as part of this notice. The Complaint was received by State Farm's Irvine Operations Center on August 22, 2012.

2. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. section 1332, and is one that may be removed to this Court by State Farm pursuant to the provisions of 28 U.S.C. section 1441, subdivision (a), in that it is a



FAXED

civil action wherein the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and is between citizens of different states.

3. The fact that the amount in controversy exceeds the minimum requirement for diversity jurisdiction can be determined by the nature of the claims and the amount and type of the damages sought in the complaint. Plaintiff claims that he suffered a loss covered by his State Farm policy in November 2009. (Complaint, ¶ ¶ 4-11.) Specifically, plaintiff claims that his truck was vandalized. (Id.) Plaintiff claims he uses the truck at issue in his well-drilling business. (Complaint, ¶ 4.) Plaintiff claims he suffered actual damages for the loss of use of his truck for 226 days, which caused him actual loss of use damages of $51,980. (Complaint, ¶ 55.)

4. Plaintiff asserts a claim for punitive damages. (Complaint, ¶ 74.) Even if the Court adopted a "due process multiplier" of just one times actual damages, the amount in controversy would be more than $75,000. *Johnson v. Ford Motor Co.*, 35 Cal.4th 1191 (2005); *Wysinger v. Automobile Club of Southern California*, 157 Cal.App.4th 413 (2007). Plaintiff seeks, at a minimum, consequential breach of contract damages of $51,980. A punitive damages due process multiplier of just one would render the amount in controversy more than $100,000.

5. Plaintiff also seeks general damages and attorney fees. (Complaint, Prayer for relief, p. 33:20.) The prayer for attorney fees constitutes an element of plaintiff's special damages on a theory that plaintiff incurred these so-called *Brandt* fees to recover unreasonably withheld policy benefits. *Brandt v. Superior Court* (1985) 37 Cal.3d 813.

6. Plaintiff also alleges that State Farm engaged in unfair claim handling practices in violation of California Business and Professions Code Sections 17200 et seq. (Complaint, ¶ 62.) Plaintiff seeks "appropriate injunctive relief," disgorgement and restitution, and attorney fees. (Complaint, ¶ 66.) The impact of a claim for injunctive relief on the amount in controversy can be determined from the cost for the defendant to comply or the amount the plaintiff stands to gain. *Ridder Bros., Inc.*

*v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944.) To the extent plaintiff is seeking injunctive relief to require State Farm to change its claim handling practices, the cost for State Farm to implement the personnel training and documentation necessary to do so would alone satisfy the amount in controversy requirement.

7. At the time of the commencement of this action, and at all times since, State Farm has been, and still is, a corporation of the State of Illinois, being incorporated under the laws of Illinois, and has had and continues to have its principal place of business in Illinois. Plaintiff Joseph Mathew has been and continues to be a citizen of the State of California. (Complaint, ¶ 1.)

8. This action was brought in the State of California. This corporate defendant is not, at the time of the institution of this action, and is not now, a corporation incorporated under the laws of the State of California, and does not have at the time of the institution of this action, and does not have now, its principal place of business in California.

## DEMAND FOR JURY TRIAL

State Farm Mutual Automobile Insurance Company hereby demands a trial by jury.

Dated: September 20, 2012

HAYES SCOTT BONINO ELLINGSON & McLAY, LLP

By ________________________

STEPHEN M. HAYES
STEPHEN P. ELLINGSON
Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

# EXHIBIT 1

ENDORSED-FILED
JUL - 2 2012
CLERK OF MENDOCINO COUNTY
SUPERIOR COURT OF CALIFORNIA
JOHN LOZANO

LAW OFFICE OF DAVID M. KINDOPP
DAVID M. KINDOPP (SB# 183991)
211 West Standley Street
Ukiah, California 95482
Phone: (707) 462-4080
Fax: (707) 462-4096
Email: lawofffice@kindopplaw.com

Attorney for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR

THE COUNTY OF MENDOCINO, UKIAH BRANCH

* * * * *

| | |
|---|---|
| JOHN MORRISON,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. SCUK-CVPT 1260492<br>Unlimited<br><br>COMPLAINT FOR ACTUAL DAMAGES COMPENSATORY DAMAGES, GENERAL DAMAGES, PUNITIVE DAMAGES, INJUNCTIVE RELIEF, AND DISGORGEMENT |

Plaintiff, JOHN MORRISON, hereby alleges, as follows:

1. Plaintiff, JOHN MORRISON, has, at all points in time alleged herein, been a resident of the State of California, County of Mendocino.

2. Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (hereinafter referred to as STATE FARM), is a corporation that is organized under the laws of the State of Illinois. STATE FARM is registered with and authorized by the State

of California Department of Insurance and the State of California Secretary of State to transact the business of insurance in the State of California; and, it has transacted a substantial amount of insurance business in the State of California within the meaning of *California Insurance Code* § 35. STATE FARM has numerous offices located within and throughout the State of California in which it transacts the business of insurance.

3. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such defendants.

4. STATE FARM issued an automobile insurance policy to Plaintiff (Policy Number C04 1655-A29-05U), which was effective on November 25, 2009, and at all other points in time pertinent to the allegations contained herein. Plaintiff paid the premiums as and for said policy of automobile insurance thereby creating a binding and enforceable insurance contract between the Plaintiff and STATE FARM. Plaintiff's 2008 Ford F450HD truck was an insured vehicle under the automobile insurance policy. Plaintiff's truck was "garaged" at his residence, which was and is located in Mendocino County, California; and, Plaintiff principally used said vehicle in Mendocino County, California. Plaintiff used the vehicle in question in his well drilling business, which was disclosed to STATE FARM prior to its issuance of said policy of automobile insurance to Plaintiff.

5. Plaintiff was sold the policy of insurance by an agent of STATE FARM, Jay Epstein. Jay Epstein's insurance offices are located in Mendocino County, California. The policy of automobile insurance included comprehensive coverage for loss of or damage to Plaintiff's 2008 Ford F450HD truck including, but not limited to, the vehicle and equipment which is common to the use of the vehicle.

6. Comprehensive coverage under an automobile insurance policy is coverage for loss or damage to the insured motor vehicle resulting from a cause other than a collision. (*California Insurance Code* § 11580.07.) Comprehensive coverage includes all loss of or damage to a vehicle that is caused by an accident except that which is specifically excluded by the policy. (*Sackett v. Farmers Ins. Exchange* (1965) 237 Cal.App.2d Supp. 899, 901.) The term accident has been interpreted to mean unexpected, unforeseen, and involuntary, insofar as the insured is concerned. (*Ibid.*)

7. The STATE FARM automobile insurance policy provides, in pertinent part, as follows:

> We will pay for loss to your car EXCEPT ***LOSS*** CAUSED BY ***COLLISION***, but only for the amount of each such loss in excess of the deductible amount of each loss in excess of the deductible amount, if any.

State Farm's automobile insurance policy defines "loss," as follows:

> "***Loss*** – means, when used in this section, each direct and accidental loss of or damage to:
>
> 1. ***your car***;
> 2. Its equipment which is common to the use of ***your car*** as a vehicle ...."

There is no definition of "direct and accidental" in the automobile insurance policy.

8. On or about Wednesday November 25, 2009, Plaintiff sustained a loss of and/or damage to his 2008 Ford F450HD truck. On November 25, 2009, Plaintiff's truck started to lose power while he was driving it. A dash light came on the display console in the vehicle (i.e. drain water separator), so Plaintiff pulled the vehicle to the side of the road. The truck was towed to the closest Ford dealership, which was Holder Ford in Lakeport, California. Plaintiff was informed by Holder Ford that they would not be able to take a look at his truck until after the Thanksgiving holiday.

9. Plaintiff had previous problems with his 2008 Ford F450HD truck for which a claim was submitted to STATE FARM. The previous claim was based on water damage to the motor, which destroyed the motor. STATE FARM covered the claim by paying for a new motor and for it to be installed in the truck. STATE FARM had Corning Ford install the new motor in Plaintiff's truck. When the new motor was installed in the truck, Plaintiff was informed by STATE FARM that it guaranteed the new motor for the life of the motor. After the new motor was installed in his truck, the truck was parked on Plaintiff's real property near his barn, which is located about 300-500 feet from his house. At this point in time, the truck had an aftermarket steel fuel tank permanently affixed to the bed of the truck, which was common to Plaintiff's use of the truck. Neither the aftermarket steel fuel tank that was installed on the truck nor the truck's stock fuel cap had any form of locking mechanism.

10. As of November 25, 2009, the new motor that had been installed in Plaintiff's truck by Corning Ford only had about 4,000 miles on it.

11. On November 27, 2009, Plaintiff called Corning Ford and informed it as to the problem that he was having with the truck. Plaintiff called Corning Ford because it is the

dealership that installed the new motor in his truck. Corning Ford informed Plaintiff that it wanted his truck towed to it because it had installed the new motor in his truck.

12. On December 2, 2009, Plaintiff notified STATE FARM that he was experiencing problems with his truck, which were similar in nature to the problems that he had previously experienced. In that the problems were similar to the previous problems that Plaintiff had previously experienced with his truck, he was not sure whether STATE FARM would consider this a "new" claim or whether it would consider this a part of the "old" claim for which STATE FARM had guaranteed the "new" motor for the life of the truck.

13. On December 2, 2009, STATE FARM informed Plaintiff that it would send someone to Holder Ford to inspect the truck.

14. On December 2, 2009, Plaintiff was informed by Holder Ford that someone from STATE FARM had inspected the truck.

15. On December 11, 2009, STATE FARM informed Plaintiff that it was probably not going to cover this claim.

16. On December 16, 2009, STATE FARM informed Plaintiff that it was not going to re-open the prior claim or provide coverage for a "new" claim because the loss was not caused by vandalism. According to STATE FARM, the loss was caused by Plaintiff's failure to change the fuel filters at proper intervals. Plaintiff explained to STATE FARM that the damage was not caused by a failure to change the fuel filters; and, STATE FARM indicated that it would get back to him in a day or two. Plaintiff informed STATE FARM that he was towing the truck to Corning Ford for an evaluation because it has installed the new motor; and, STATE FARM agreed that it was a good idea that he do so.

17. On December 22, 2009, Corning Ford informed Plaintiff that they were trying to determine what had caused the problem with truck and, thus far, it had found rust in the fuel lines.

18. On December 28, 2009, Corning Ford informed Plaintiff that it had found water in the aft tank (located in the bed of the truck), but it did not appear to be enough water to cause the rust that existed in the fuel lines.

19. On January 10, 2010, STATE FARM informed Plaintiff that is was not opening a "new" claim, but was instead going to re-open the last claim. STATE FARM indicated that it was going to contact Corning Ford to discuss the matter.

20. On January 13, 2010, Corning Ford informed Plaintiff that it had had a discussion with STATE FARM about the truck.

21. Plaintiff is informed and believes that on or about January 22, 2010, an engineer that had been retained by STATE FARM, Thomas J. Lepper of Garrett Engineers, Inc., inspect the truck at Corning Ford. Plaintiff is informed and believes that the engineer looked at the truck and took a couple of samples of the fuel. Plaintiff is informed and believes that Mr. Lepper was only present at Corning Ford inspecting the truck for a total of approximately fifteen (15) minutes.

22. On February 8, 2010, Mr. Lepper, as an agent of STATE FARM, prepared and signed a report concerning his inspection of the truck. When Mr. Lepper inspected the truck, the fuel system was partially disassembled and more than two months had elapsed. During this two month period of time, the truck and/or its parts were stored outside during the winter and the truck was transported from Lakeport to Corning during the winter. Plaintiff is informed and

believes that it was unreasonable for STATE FARM to take more than 2 months to have an engineer inspect the truck and that STATE FARM'S unreasonable delay resulted in the loss of evidence (i.e. verification of the condition of the truck, its engine, its fuel tanks, and the fuel system at the time of the loss).

23. In his February 8, 2010 report, Mr. Lepper concluded that the fuel system was contaminated with water, rust, and dirt. Mr. Lepper's report states that the fuel system could have been contaminated by unknowingly adding contaminated fuel to the stock fuel system from the aft fuel tank or contaminated fuel having been added to the fuel system by an act of vandalism.

24. Mr. Lepper's report indicates that he examined the truck's fuel filler area; and, that it did not have a lock or other device that would prevent anyone from accessing the fuel filler area. He observed that there was dirt, grime, and debris found around the neck of the fuel filler area. According to the report, the foregoing would indicate that a proper fuel pump nozzle was not used to fill the stock fuel tank because a proper fuel pump nozzle would not have left the dirt, grime, and debris that he observed. Hence, according to Mr. Lepper's report, the foregoing supports a finding that some unknown person vandalized Plaintiff's truck.

25. Mr. Lepper's report indicates that he found dirt, debris, and water in the stock fuel tank. He also observed that the metal rod for the fuel level gauge was rusted along its entire length, which indicated to him that water contaminated fuel had been at all levels of the fuel tank. Mr. Lepper's report further indicates that he obtained fuel samples from the fuel canister portion of the Fuel Conditioning Module/Horizontal Fuel Conditioning Module, which was visibly contaminated with water, debris, and rust flakes. However, the report does not

indicate that Mr. Leeper obtained fuel samples from the aftermarket steel fuel tank. Additionally, the report indicates that the fuel samples were not sent to a laboratory for testing. Nevertheless, Mr. Lepper concluded that the most probable source of the metal rust flakes was the aftermarket steel fuel tank. Moreover, Mr. Leeper's report never explains how the rust flakes in the fuel could have damaged the motor when the engine has two fuel filters that would prevent the rust flakes from making it to the motor.

26. Mr. Lepper concluded that the fuel system was damaged by the introduction of contaminated fuel that was pumped into the stock fuel system. Mr. Lepper's report indicates that the contaminated fuel probably came from the aft fuel tank, which fuel could have been contaminated by an act of vandalism and then a person unknowingly putting the contaminated fuel into the truck's stock fuel tank. However, his report also indicates that contaminated fuel could have also been put directly into the stock fuel tank based on his visual observations of the dirt, grime, and debris found around the neck of the fuel filler area.

27. On February 9, 2010, Plaintiff called STATE FARM to inquire as to whether STATE FARM was going to cover the claim. STATE FARM informed Plaintiff that someone would contact him in the near future.

28. On February 16, 2010, for some unknown reason, an "Addendum Report" was prepared by Mr. Leeper. Therein, Mr. Leeper changed his conclusion for some unknown reason. Mr. Leeper now concluded that the diesel fuel in the aftermarket fuel tank was contaminated by long-term rust and deterioration of the fuel tank. Furthermore, the "Addendum Report" indicated that Mr. Leeper did in fact collect a fuel sample from the aftermarket fuel tank; and, that the aftermarket fuel tank contained the same rust flakes and

particles that were found in the bottom of the stock fuel tank. Mr. Leeper now concluded that damage to the fuel system and motor was caused by putting "old and contaminated fuel" from the aftermarket fuel tank into the stock fuel tank. Moreover, according the "Addendum Report," this "strongly indicates that the fuel contamination was not an act of vandalism."

29. Mr. Leeper's "Addendum Report" does not indicate that he had the fuel samples tested by a laboratory. Consequently, his conclusion that the aftermarket fuel tank contains the same rust flakes and particles that were found in the bottom of the stock fuel tank was without of a proper scientific basis. Continuing, Mr. Leeper's speculation that fuel was stored in the aftermarket fuel tank and was becoming contaminated by rust therein is directly contrary to Plaintiff's regular use of the tank to fuel his equipment and the fact that he had recently filled the aftermarket fuel tank with clean fuel from a commercial fuel station. Furthermore, the "Addendum Report" ignores the fact that contaminated fuel could still have been placed in the aftermarket fuel tank; and, it fails to address the fact that Mr. Leeper observed dirt, grime, and debris around the neck of the fuel filler area of the stock fuel tank.

30. Mr. Leeper's "Addendum Report" does not indicate what, if anything, he reviewed or what new or additional information that he was provided between February 8, 2010 and February 16, 2010, to change his opinion. Mr. Leeper's "Addendum Report" does not indicate why he even issued an addendum to his initial report.

31. Plaintiff believes that STATE FARM had Mr. Leeper draft an addendum in order to justify its denial of coverage for this claim.

32. On February 17, 2010, Plaintiff was informed by his STATE FARM agent that it appeared as though STATE FARM was going to cover his claim.

33. On February 18, 2010, Plaintiff contacted STATE FARM and asked for a copy of its engineer's report. Plaintiff was informed at that time that STATE FARM was denying his claim because the water damage to engine was caused by the build-up of condensation over time and not an act of vandalism.

34. In a letter dated February 18, 2010, STATE FARM informed Plaintiff that it was not going to cover this claim because the report prepared by the engineer it retainer stated that the water in the gas tank was the result of condensation, not vandalism; and; that the water caused a "rust condition" over time. Therefore, according to STATE FARM, the damage or loss was not a "direct and accidental loss" under the automobile insurance policy. The letter from STATE FARM told Plaintiff to contact STATE FARM if he has any questions or if he believed that his claim has been wrongfully denied.

35. On or about March 2, 2010, Plaintiff went to Corning Ford to retrieve items from his truck. Plaintiff removed the aftermarket steel fuel tank and brought it home with him so that he could continue to use it in his well drilling business operations.

36. On or about March 4, 2010, Plaintiff noticed that the weld on the "bung" that connects the electric pump, which pumps fuel from the aftermarket steel fuel tank, was cracked. This crack would allow water to enter the truck's aftermarket steel fuel tank. Plaintiff also observed a mark or scratch on the truck's aftermarket steel fuel tank, which caused him to believe that something hit the tank including the "bung", causing the weld on the bung to fracture.

37. Plaintiff was not aware of any facts that supported STATE FARM'S conclusion that the presence of water in the aftermarket fuel tank was caused by condensation; and,

Plaintiff informed STATE FARM of the foregoing. The facts of which Plaintiff was aware caused him to believe that water, rust, and/or debris in the truck's fuel system was caused by vandalism and/or intrusion of water through the crack in the "bung."

38. By this point in time, the engine could not be repaired and it had to be replaced because it had sat so long. The need to replace the engine, as opposed to merely repairing it, was caused by STATE FARM'S failure to conduct a prompt and thorough investigation.

39. In a comprehensive letter dated March 11, 2010, from Plaintiff's attorney to STATE FARM, Plaintiff's attorney demanded that STATE FARM provide coverage for the loss and/or damage to Plaintiff's vehicle. Therein, Plaintiff's counsel demanded that STATE FARM put a new motor and fuel system in Plaintiff's truck; and, that it compensate him for the loss of use of his vehicle due to STATE FARM'S unreasonable delay in processing his claim and repairing his vehicle.

40. In a letter from STATE FARM to Plaintiff's attorney, dated March 24, 2010, STATE FARM acknowledged that it had received notification of an incident alleged to have occurred on or about November 26, 2009; and, that it may have no duty to pay, indemnify, or defend, or otherwise perform under the policy because: "'[i]t is questionable whether the loss claimed is a direct and accidental loss as defined under the policy." The letter also stated that STATE FARM was reserving all of its rights under the policy, including the right to deny coverage in its entirety.

41. In a letter from STATE FARM to Plaintiff's attorney, dated March 26, 2010, STATE FARM indicated that it was in receipt of correspondence from Plaintiff's attorney demanding reconsideration of Plaintiff's claim regarding the loss or damage to Plaintiff's truck.

The letter also stated that STATE FARM was reviewing the information contained within the letter from Plaintiff's counsel and that it would be in contact with Plaintiff's counsel in the near future.

42. In a letter dated April 14, 2010, from Plaintiff's counsel to STATE FARM, Plaintiff's counsel explained that: (a) Plaintiff's counsel had sent a comprehensive letter to STATE FARM on March 11, 2010, where he set forth the history of Plaintiff's claim; (b) that STATE FARM has not conducted a proper investigation into Plaintiff's claim; (c) that STATE FARM had actually conducted a biased investigation; (d) that STATE FARM had taken an unreasonable amount of time to ultimately deny Plaintiff's claim (December 2, 2009 – February 18, 2010); and, (e) that STATE FARM had denied Plaintiff's claim without a legitimate basis. Therein, Plaintiff's counsel reaffirmed that the damage or loss to Plaintiff's vehicle was direct and accidental under the terms of the automobile insurance policy; and, therefore, there was coverage under the policy. Furthermore, Plaintiff's counsel explained that thirty-five (35) days had elapsed since his letter to STATE FARM dated March 11, 2010; and, twenty (20) days had elapsed since the date of STATE FARM'S most recent letter wherein STATE FARM stated that it would provide a response "in the near future." Plaintiff's counsel explained that STATE FARM was not complying with its legal obligation to promptly process Plaintiff's claim and to communicate with its insured in a timely manner. Plaintiff's counsel once again demanded that STATE FARM immediately agree to pay for a new engine and fuel system to be installed in Plaintiff's truck and that it pay for the loss of use of his truck since November 25, 2009.

43. In a letter dated April 23, 2010, from Plaintiff's counsel to STATE FARM, Plaintiff's counsel explained that: (a) forty-four (44) days had elapsed since he had sent his

letter to STATEFARM on March 11, 2010; and, (b) twenty (29) days had elapsed since STATE FARM'S most recent correspondence wherein it stated that it would be providing a response to dais letter "in the near future"; (c) nine (9) days had elapsed since Plaintiff's counsel had sent his letter to STATE FARM dated April 14, 2010, wherein he explained how concerned and frustrated the Plaintiff had become with STATE FARM's unreasonable delay in the processing of his claim. Therein, Plaintiff's counsel once again explained that Plaintiff had not been able to use his truck since November 25, 2009; that he has not been able to generate income to make his payment for Ford Motor Credit; that Ford Motor Credit was threatening to repossess his truck; and, that his credit has been negatively affected by STATE FARM'S unreasonable delay in the processing of his claim. Plaintiff's counsel once again demanded that STATE FARM immediately cover this claim, pay to have the truck repaired, and pay him for the loss of use of his vehicle. Plaintiff's counsel informed STATE FARM that if he did not received a response from STATE FARM by April 30, 2012, that Plaintiff was going to institute formal proceedings against it in order to obtain benefits to which Plaintiff was entitled under the automobile insurance policy.

44. In a letter dated April 26, 2010, from STATE FARM to Plaintiff's counsel, it stated that it was going to cover the claim by paying for the installation of a new engine in Plaintiff's truck. The letter did not mention or otherwise address Plaintiff's demand that STATE FARM compensate him for his loss of use of his vehicle since November 25, 2010.

45. Thereafter, STATE FARM took an unreasonable amount of time to approve the cost of and/or to authorize the installation of a new engine in the truck by the automobile repair facility. STATE FARM did not send an auto estimator to the automobile repair facility until

June 17, 2010, which was fifty-one (51) days after STATE FARM acknowledged that the loss was covered under the policy and, therefore, that it would pay to have the engine and fuel system replaced.

46. The repairs to Plaintiff's vehicle were not completed until on or about July 8, 2010. Plaintiff took possession of his vehicle on July 9, 2010. Plaintiff was unable to use his vehicle from November 25, 2009, to July 9, 2010, which is a total of 226 days or 7 ½ months. Plaintiff was without the use of his vehicle for 226 days because of: (a) STATE FARM'S failure to process his claim in a timely manner; (b) STATE FARM'S failure to promptly and properly investigate his claim; (c) STATE FARM'S having intentionally conducted a biased investigation with the intent of denying his claim; (d) STATE FARM'S initial wrongful denial of his claim; and, thereafter, (e) as a result of STATE FARM'S unreasonable delay in approving the cost of and/or its failure to authorize the installation of a new engine and fuel system in the truck by the automobile repair facility.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

47. Plaintiff realleges and incorporates herein by reference paragraphs 1 though 46 as though fully set forth hereinafter.

48. Plaintiff was an insured under the automobile insurance policy referenced hereinabove. The automobile insurance policy constitutes a written contract between Plaintiff and STATE FARM.

49. The automobile insurance policy required STATE FARM to pay for damage or loss to Plaintiff's vehicle that was caused by a direct and accidental loss.

50. Plaintiff sustained damage or a loss to his vehicle that was caused by a direct and accidental loss; and, therefore, the damage or loss covered under the automobile insurance policy.

51. The express and/or implied terms of the automobile insurance policy by way of the policy itself and the pertinent provisions of the Insurance Code and Title 10 of the California Code of Regulations, which are deemed a part thereof, required STATE FARM to do the following in the handling and/or processing of Plaintiffs claim:

a. disclose to Plaintiff all benefits, coverage, time limits and/or other provisions of the insurance policy that may have applied to Plaintiff's claim (Title 10, § 2965.4, subdivision (a), of the California Code of Regulations);

b. immediately, but in no event more than 15 days after receipt of a communication from Plaintiff (or his authorized agent) that reasonably suggests a response is expected, furnish Plaintiff (or his authorized agent) with a complete response based on the facts as then known by STATE FARM (Title 10, § 2965.5, subdivision (b), of the California Code of Regulations);

c. upon receiving notice of a claim from Plaintiff, , but in no event more than 15 days thereafter:

i. acknowledge receipt of notice of Plaintiff's claim;

ii. provide Plaintiff with all necessary form, instructions, and reasonable assistance including, but not limited to, specifying the information the claimant must provide for proof of the claim;

iii. begin any necessary investigation of the claim (Title 10, § 2965.5, subdivision (e), of the California Code of Regulations);

d. immediately, but in no event more than 40 days after receiving proof of Plaintiff's claim, accept or deny Plaintiff's claim, in whole or in part (Title 10, § 2965.7, subdivision (b), of the California Code of Regulations);

e. set forth in writing the factual and legal basis for each reason STATE FARM denied Plaintiff's claim (Title 10, § 2965.7, subdivision (b)(1), of the California Code of Regulations);

f. conduct and diligently pursue a thorough, fair, and objective investigation of Plaintiff's claim (Title 10, § 2965.7, subdivision (d), of the California Code of Regulations);

g. upon acceptance of the claim, immediately, but in no event more than 30 days thereafter, tender payment or otherwise take action to perform its claim obligation(s) (Title 10, § 2965.7, subdivision (h), of the California Code of Regulations);

h. not misrepresent to Plaintiff pertinent facts or insurance policy provisions relating to the coverages at issue (*California Insurance Code* § 790.03, subdivision (h)(1));

i. acknowledge and act reasonably promptly upon communications with respect to claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(2));

j. adopt and implement reasonable standards for the prompt investigation and processing of claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(3));

k. affirm or deny coverage for Plaintiff's claim within a reasonable time after proof of loss requirements had been completed and submitted by Plaintiff (*California Insurance Code* § 790.03, subdivision (h)(4));

l. attempt in good faith to effectuate prompt, fair, and equitable settlements of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(5));

m. not compel Plaintiff, its insured, to institute litigation to recover amounts due under the automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(6)); and,

n. provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(13)).

52. STATE FARM initially rejected Plaintiff's claim; and, its rejection of Plaintiff's claim was unreasonable and without proper cause. STATE FARM failed to comply with its obligations under the insurance contract by initially denying Plaintiff's claim; and, it failed to

comply with its statutorily prescribed obligations that are implied in and are a part of the automobile insurance contract, as set forth in the immediately preceding paragraph. More specifically, STATE FARM failed and/or refused to:

a. disclose to Plaintiff all benefits, coverage, time limits and/or other provisions of the insurance policy that may have applied to his claim (Title 10, § 2965.4, subdivision (a), of the California Code of Regulations);

b. immediately, but in no event more than 15 days after receipt of a communication from Plaintiff (or his authorized agent) that reasonably suggested a response was expected, furnish Plaintiff (or his authorized agent) with a complete response based on the facts as then known by STATE FARM (Title 10, § 2965.5, subdivision (b), of the California Code of Regulations);

c. upon receiving notice of Plaintiff's claim, immediately, but in no event more than 15 days thereafter:

i. acknowledge receipt of notice of Plaintiff's claim;

ii. provide Plaintiff with all necessary form, instructions, and reasonable assistance including, but not limited to, specifying the information the claimant must provide for proof of the claim;

iii. begin any necessary investigation of the claim (Title 10, § 2965.5, subdivision (e), of the California Code of Regulations);

d. immediately, but in no event more than 40 days after receiving proof of Plaintiff's claim, accept or deny Plaintiff's claim, in whole or in part (Title 10, § 2965.7, subdivision (b), of the California Code of Regulations);

e. set forth in writing the factual and legal basis for each reason it was denying Plaintiff's claim (Title 10, § 2965.7, subdivision (b)(1), of the California Code of Regulations);

f. conduct and diligently pursue a thorough, fair, and objective investigation of Plaintiff's claim (Title 10, § 2965.7, subdivision (d), of the California Code of Regulations);

g. upon acceptance of Plaintiff's claim, immediately, but in no event more than 30 days thereafter, tender payment or otherwise take action to perform its claim obligation(s) (Title 10, § 2965.7, subdivision (h), of the California Code of Regulations);

h. not misrepresent to Plaintiff pertinent facts or insurance policy provisions relating to the coverages at issue (*California Insurance Code* § 790.03, subdivision (h)(1));

i. acknowledge and act reasonably promptly upon communications with respect to claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(2));

j. adopt and implement reasonable standards for the prompt investigation and processing of claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(3));

k. affirm or deny coverage for Plaintiff's claim within a reasonable time after proof of loss requirements had been completed and submitted by Plaintiff (*California Insurance Code* § 790.03, subdivision (h)(4));

l. attempt in good faith to effectuate prompt, fair, and equitable settlements of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(5));

m. not compel Plaintiff, its insured, to institute litigation to recover amounts due under the automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(6)); and,

n. promptly provide a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(13)).

53. Plaintiff performed all of his obligations under the contract of insurance including, but not limited to, paying his premiums and cooperating in the processing of his claim.

54. STATE FARM's breach was material in that Plaintiff was not able to use his vehicle for personal or business purposes from November 25, 2009, to July 9, 2010, which is a total of 226 days or 7 ½ months.

55. Plaintiff has sustained actual and consequential damages as a direct and proximate cause of STATE FARM'S breach in that he was without the use of his vehicle from November 25, 2009, to July 9, 2010, which is a total of 226 days or 7 ½ months. Plaintiff is informed and believes that thereupon alleges that the fair market value for his loss of use of his vehicle is $230 per day and, hence, he sustained actual damages in the amount of $51,980.

**SECOND CAUSE OF ACTION**
**(Negligence)**

56. Plaintiff realleges and incorporates herein by reference paragraphs 1 though 55 as though fully set forth hereinafter.

57. STATE FARM owed Plaintiff a duty of care in the handling and processing of his claim, as mandated by the insurance contact, *California Insurance Code* § 790.03, subdivision (h), and Title 10, §§ 2965.4, 2965.5, and 2965.7, of the California Code of Regulations.

58. STATE FARM breached its duty of care to Plaintiff by the manner in which it handled and processed his claim. More specifically, STATE FARM breached its duty of care to Plaintiff by:

a. not disclosing to Plaintiff all of the benefits, coverage, time limits and/or other provisions of the insurance policy that applied to his claim (Title 10, § 2965.4, subdivision (a), of the California Code of Regulations);

b. not, immediately, but in no event more than 15 days after receipt of a communication from Plaintiff (or his authorized agent) that reasonably suggested a response was expected, furnishing Plaintiff (or his authorized

agent) with a complete response based on the facts as then known by STATE FARM (Title 10, § 2965.5, subdivision (b), of the California Code of Regulations);

c. not, upon receiving notice of Plaintiff's claim, immediately, but in no event more than 15 days thereafter:

i. acknowledging receipt of notice of Plaintiff's claim;

ii. providing Plaintiff with all necessary form, instructions, and reasonable assistance including, but not limited to, specifying the information the Plaintiff needed to provide for proof of his claim;

iii. beginning the necessary investigation of the claim (Title 10, § 2965.5, subdivision (e), of the California Code of Regulations).

d. not, immediately, but in no event more than 40 days after receiving proof of Plaintiff's claim, accepting or denying Plaintiff's claim, in whole or in part (Title 10, § 2965.7, subdivision (b), of the California Code of Regulations).

e. not, setting forth in writing the factual and legal basis for each reason STATE FARM denied Plaintiff's claim (Title 10, § 2965.7, subdivision (b)(1), of the California Code of Regulations).

f. not conducting and diligently pursuing a thorough, fair, and objective investigation of Plaintiff's claim (Title 10, § 2965.7, subdivision (d), of the California Code of Regulations).

g. not, upon acceptance of Plaintiff's claim, immediately, but in no event more than 30 days thereafter, tendering payment or otherwise taking action to perform its claim obligation(s) (Title 10, § 2965.7, subdivision (h), of the California Code of Regulations).

h. misrepresenting to Plaintiff pertinent facts or insurance policy provisions relating to the coverages at issue (*California Insurance Code* § 790.03, subdivision (h)(1)).

i. failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(2)).

j. failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(3)).

k. failing to affirm or deny coverage for Plaintiff's claim within a reasonable time after proof of loss requirements had been completed and submitted by Plaintiff (*California Insurance Code* § 790.03, subdivision (h)(4)).

l. not attempting in good faith to effectuate prompt, fair, and equitable settlements of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(5)).

m. compelling Plaintiff, its insured, to institute litigation to recover amounts due under the automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(6)).

n. failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(13)).

59. STATE FARM's breach of its obligations imposed by the aforementioned statute and regulations resulted in a substantial delay in the repair of Plaintiff's vehicle (i.e. from November 25, 2009, to July 9, 2010, which is a total of 226 days or 7 ½ months), during which period of time he was not able to use his vehicle for personal or business purposes.

60. Plaintiff has sustained actual and consequential damages as a direct and proximate cause of STATE FARM'S breach. Plaintiff is informed and believes that thereupon alleges that the fair market value for the use of his vehicle is $230 per day and, hence, he has sustained actual damages in the amount of $51,980 as a direct and proximate cause of STATE FARM's wrongful conduct.

**THIRD CAUSE OF ACTION**
**(Unfair Business Act or Practice)**

61. Plaintiff realleges and incorporates herein by reference paragraphs 1 though 60 as though fully set forth hereinafter.

62. STATE FARM is required to process claims in the State of California, including Plaintiff's claim, accordance with the pertinent provisions of the California Insurance Code and

Title 10 of the California Code of Regulations. As set forth hereinabove, STATE FARM failed and/or refused to perform its obligations as mandated by Title 10, §§ 2965.4, 2965.5, and 2965.7, of the California Code of Regulations. Additionally, STATE FARM was prohibited by *California Insurance Code* § 790.03, subdivision (h), from engaging in the following conduct when processing Plaintiff's claim, but STATE FARM did so nevertheless. More specifically, STATE FARM engaged in the following conduct in violation of the statutes and regulations that govern the conduct of insurers in the State of California:

a. not disclosing to Plaintiff all of the benefits, coverage, time limits and/or other provisions of the insurance policy that applied to his claim (Title 10, § 2965.4, subdivision (a), of the California Code of Regulations);

b. not, immediately, but in no event more than 15 days after receipt of a communication from Plaintiff (or his authorized agent) that reasonably suggested a response was expected, furnishing Plaintiff (or his authorized agent) with a complete response based on the facts as then known by STATE FARM (Title 10, § 2965.5, subdivision (b), of the California Code of Regulations);

c. not, upon receiving notice of Plaintiff's claim, immediately, but in no event more than 15 days thereafter:

i. acknowledging receipt of notice of Plaintiff's claim;

ii. providing Plaintiff with all necessary form, instructions, and reasonable assistance including, but not limited to, specifying the information the Plaintiff needed to provide for proof of his claim;

iii. beginning the necessary investigation of the claim (Title 10, § 2965.5, subdivision (e), of the California Code of Regulations);

d. not, immediately, but in no event more than 40 days after receiving proof of Plaintiff's claim, accepting or denying Plaintiff's claim, in whole or in part (Title 10, § 2965.7, subdivision (b), of the California Code of Regulations);

e. not, setting forth in writing the factual and legal basis for each reason STATE FARM denied Plaintiff's claim (Title 10, § 2965.7, subdivision (b)(1), of the California Code of Regulations);

f. not conducting and diligently pursuing a thorough, fair, and objective investigation of Plaintiff's claim (Title 10, § 2965.7, subdivision (d), of the California Code of Regulations);

g. not, upon acceptance of Plaintiff's claim, immediately, but in no event more than 30 days thereafter, tendering payment or otherwise taking action to perform its claim obligation(s) (Title 10, § 2965.7, subdivision (h), of the California Code of Regulations);

h. misrepresenting to Plaintiff pertinent facts or insurance policy provisions relating to the coverages at issue (*California Insurance Code* § 790.03, subdivision (h)(1));

i. failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under Plaintiff's

automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(2));

j. failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(3));

k. failing to affirm or deny coverage for Plaintiff's claim within a reasonable time after proof of loss requirements had been completed and submitted by Plaintiff (*California Insurance Code* § 790.03, subdivision (h)(4));

l. not attempting in good faith to effectuate prompt, fair, and equitable settlements of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(5));

m. compelling Plaintiff, its insured, to institute litigation to recover amounts due under the automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(6)); and,

n. failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(13)).

63. STATE FARM has engaged in an unfair, unlawful, and/or fraudulent business act or practice within the meaning of *California Business & Professions Code* § 17200 et seq.

by failing and/or refusing to perform its obligations as mandated by the pertinent statutes and/or regulations that govern the processing of claims in the State of California, including Plaintiff's claim, as set forth hereinabove.

64. STATE FARM's breach of its obligations imposed by aforementioned statutes and/or regulations caused a substantial delay in the repair of Plaintiff's vehicle (i.e. from November 25, 2009, to July 9, 2010, which is a total of 226 days or 7 ½ months), during which period of time he was not able to use his vehicle for personal or business purposes.

65. Plaintiff was harmed and/or damaged by STATE FARM'S failure to comply with the aforementioned statutes and/or regulations. Plaintiff is informed and believes and thereupon alleges that the fair market value for the use of his vehicle is $230 per day and, hence, he has sustained actual and/or consequential damages in the amount of $51,980 as a direct and proximate cause of STATE FARM's unfair, unlawful, and/or fraudulent business act or practice.

66. Plaintiff does not have an adequate remedy at law. Plaintiff seeks appropriate injunctive relief against STATE FARM, disgorgement and/or restitution by STATE FARM, and an award of attorney's fees and costs in favor of Plaintiff and against STATE FARM.

**FOURTH CAUSE OF ACTION**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

67. Plaintiff realleges and incorporates herein by reference paragraphs 1 though 66 as though fully set forth hereinafter.

68. In California, a covenant of good faith and fair dealing is implied in every insurance contract. To fulfill its implied obligation of good faith and fair dealing, an insurer

must give at least as much consideration to the interests of the insured as it gives to its own interests. The implied covenant of good faith and fair dealing prohibits an insurer from impairing the insured's right to receive the benefits for which he or she contracted under a policy of insurance. An insurer breaches the implied covenant of good faith and fair dealing by engaging in an unreasonable delay or unreasonably withholding benefits that the insured was entitled to receive under the insurance policy. An insurer cannot reasonably and in good faith deny payments to its insured with*out fully* investigating the grounds for its denial. Additionally, in order to protect the interests of its insured, an insured must *fully* inquire into the *possible* bases that *might* support the insured's claim for coverage.

69. STATE FARM initially rejected Plaintiff's claim; and, its rejection of Plaintiff's claim was unreasonable and without proper cause. STATE FARM did not conduct a prompt and thorough investigation into all possible basis that would support coverage for the Plaintiff's claim. STATE FARM conducted a biased investigation with the purpose of denying Plaintiff's claim. Thereafter, STATE FARM determined that Plaintiff's claim was covered under the insurance policy. However, STATE FARM then engaged in an unreasonable delay in providing Plaintiff the benefits to which he was entitled to receive under the insurance policy (i.e. payment for the repair of his vehicle within a reasonable period of time).

70. STATE FARM failed to comply with its prescribed obligations that are implied in and are a part of the automobile insurance contract. More specifically, STATE FARM breached the implied covenant of good faith and fair dealing by:

a. failing to disclose to Plaintiff all benefits, coverage, time limits and/or other provisions of the insurance policy that may have applied to his

claim (Title 10, § 2965.4, subdivision (a), of the California Code of Regulations);

b. failing to immediately, but in no event more than 15 days after receipt of a communication from Plaintiff (or his authorized agent) that reasonably suggested a response was expected, furnish Plaintiff (or his authorized agent) with a complete response based on the facts as then known by STATE FARM (Title 10, § 2965.5, subdivision (b), of the California Code of Regulations);

c. failing to, upon receiving notice of Plaintiff's claim, immediately, but in no event more than 15 days thereafter:

i. acknowledge receipt of notice of Plaintiff's claim;

ii. provide Plaintiff with all necessary form, instructions, and reasonable assistance including, but not limited to, specifying the information the claimant must provide for proof of the claim;

iii. begin any necessary investigation of the claim (Title 10, § 2965.5, subdivision (e), of the California Code of Regulations);

d. failing to immediately, but in no event more than 40 days after receiving proof of Plaintiff's claim, accept or deny Plaintiff's claim, in whole or in part (Title 10, § 2965.7, subdivision (b), of the California Code of Regulations);

e. failing to set forth in writing the factual and legal basis for each reason STATE FARM denied Plaintiff's claim (Title 10, § 2965.7, subdivision (b)(1), of the California Code of Regulations);

f. failing to conduct and diligently pursue a thorough, fair, and objective investigation of Plaintiff's claim (Title 10, § 2965.7, subdivision (d), of the California Code of Regulations);

g. failing to, upon acceptance of Plaintiff's claim, immediately, but in no event more than 30 days thereafter, tender payment or otherwise take action to perform its claim obligation(s) (Title 10, § 2965.7, subdivision (h), of the California Code of Regulations);

h. misrepresenting to Plaintiff pertinent facts or insurance policy provisions relating to the coverages at issue (*California Insurance Code* § 790.03, subdivision (h)(1));

i. failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(2));

j. failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under Plaintiff's automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(3));

k. failing to affirm or deny coverage for Plaintiff's claim within a reasonable time after proof of loss requirements had been completed and submitted by Plaintiff (*California Insurance Code* § 790.03, subdivision (h)(4));

l. failing to attempt in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(5));

m. compelling Plaintiff, its insured, to institute litigation to recover amounts due under the automobile insurance policy (*California Insurance Code* § 790.03, subdivision (h)(6)); and,

n. failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of Plaintiff's claim (*California Insurance Code* § 790.03, subdivision (h)(13)).

71. STATE FARM's breach of its implied obligation of good faith and fair dealing caused a substantial delay in the repair of Plaintiff's vehicle (i.e. from November 25, 2009, to July 9, 2010, which is a total of 226 days or 7 ½ months), during which period of time he was not able to use his vehicle for personal or business purposes.

72. Plaintiff was harmed and/or damaged by STATE FARM'S breach of its implied obligation of good faith and fair dealing. Plaintiff is informed and believes that thereupon alleges that the fair market value for his loss of use of his vehicle is $230 per day and, hence, he

has sustained actual damages in the amount of $51,980 as a direct and proximate cause of STATE FARM's breach of its implied obligation of good faith and fair dealing.

73. Plaintiff seeks actual, consequential, and general damages in an amount subject to proof; and, an award of attorney's fees and costs in favor of Plaintiff and against STATE FARM.

74. Plaintiff is informed and believes and thereupon alleges that the conduct of STATE FARM was fraudulent, malicious, and/or oppressive within the meaning of *California Civil Code* § 3294. Plaintiff is informed and believes and thereupon alleges that STATE FARM acted with intent to vex, injure, and annoy, with a conscious disregard of the Plaintiff's rights, and with a conscious disregard of the potential harm to Plaintiff. Plaintiff is informed and believes and thereupon alleges that the conduct of STATE FARM was reprehensible, in blatant violation of law or policy, and that its tortuous conduct rose to a level of extreme indifference to Plaintiff's rights, which decent citizens should not have to tolerate. Consequently, Plaintiff is informed and believes and thereupon alleges that he is entitled to an award of punitive damages against STATE FARM.

WHEREFORE, Plaintiff prays for a Judgment against Defendant STATE FARM as follows:

1. For actual, compensatory, general, and punitive damages in an amount subject to proof.

2. For appropriate injunctive relief.

3. For disgorgement and/or restitution.

4. For pre-judgment interest on any damages as may be authorized by law.

5. For attorney's fees and costs as permitted by law.

6. For such other and further relief as the court deems proper under the circumstances of this case.

Dated: July 2, 2012

LAW OFFICE OF DAVID M. KINDOPP

DAVID M. KINDOPP
Attorney for Plaintiff

**CASE NAME:** **Morrison (John) v. State Farm**
**CASE NO.:**

**PROOF OF SERVICE**

I am a citizen of the United States. My business address is 203 Redwood Shores Parkway, Suite 480, Redwood City, California 94065. I am employed in the County of San Mateo where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTIONS 1332 AND 1441a [DIVERSITY JURISDICTION]; DEMAND FOR JURY TRIAL**

☐ (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

☒ (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Redwood City, California.

☐ (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand this date to the addressee(s) on the attached service list.

☐ (BY E-MAIL) by transmitting via electronic mail the document(s) listed above to the email address(es) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

David M. Kindopp, Esq.
LAW OFFICES OF DAVID M. KINDOPP
211 West Standley Street
Ukiah, CA 95482
Telephone: (707) 462-4080
Facsimile: (707) 462-4096
Email: lawoffice@kindopplaw.com

**Attorney for Plaintiff**
**JOHN MORRISON**

☒ *(Federal)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 20, 2012, at Redwood City, California.

Abigail Calderon